UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cr-00402-SRC-1 |
| ) | |
| SHAWN MAHLER, ) | |
| ) | |
| Defendant. ) | |

**Memorandum and Order**

Shawn Mahler seeks compassionate release on four grounds. Doc. 90. First, Mahler claims that he suffers from medical conditions that require his release. *Id.* at 2–3 (The Court cites to page numbers as assigned by CM/ECF.). Second, Mahler claims that the Court should release him so that he can be a caretaker of his children. *Id.* at 3. Third, Mahler argues that the felon in possession of a firearm statute is unconstitutional. *Id.* at 4. Fourth, and finally, Mahler argues that Amendment 821 should have reduced the number of status points that he received. *Id.* at 4–5. Having reviewed the record, the Court finds that Mahler has failed to establish extraordinary and compelling reasons that warrant a sentence reduction, and that the factors set forth in 18 U.S.C. § 3553(a) weigh against his release. Accordingly, the Court denies Mahler's motion. Doc. 90.

**I.    Background**

   **A.    Offense background**

The Presentence Investigation Report sets forth the following facts:

   According to investigative records from United States Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agents and Task Force Officers (TFO), and the Missouri State Highway Patrol (MSHP), on January 27, 2021, investigators executed a search warrant of Shawn

Mahler's residence located . . . in Jennings, Missouri pursuant to an ongoing investigation involving narcotics and weapons violations in several states.

. . . .

Investigators arrived at the residence and attempted to conduct a knock and announce, however, [Mahler] opened the front door prior to the agents initiating the knock and announce. Mahler sat down on a couch and was immediately detained and removed from the residence. He advised investigators that his fiancée Alexis Johnson (unindicted) and juvenile son . . . were inside of the residence. As agents were clearing the living room, an AR style rifle was observed in plain view leaning against the wall immediately adjacent to where [Mahler] was previously sitting after he opened the front door. While clearing a bedroom, which appeared to be shared by Mahler and Johnson, investigators observed two firearms on a nightstand next to the bed in plain view. In addition, a number of small plants of suspected marijuana were observed in plain view on a small table in the living room of the residence.

. . . .

Investigators proceeded to the basement to continue clearing the residence. Agents located a sophisticated marijuana growing operation. Several modular "popup rooms" outfitted with lights, ventilation, and timers were immediately located in plain view in the basement of the residence. [Mahler] advised investigators that he possessed a state issued license to grow marijuana. He repeatedly stated he was able to grow "12, 12, and 12," implying he was able to possess twelve "clone" marijuana plants, twelve "flowering" marijuana plants, and twelve "non-flowering" marijuana plants. Mahler further explained he was able to grow "6, 6, and 6" plants for himself and because he was a caretaker for his fiancée, he was able to grow an additional "6, 6, and 6" plants for her. Agents located approximately 57 marijuana plants of varying sizes throughout the residence. Agents also located several containers of both harvested marijuana and processed marijuana throughout the residence. A TFO explained to Mahler that he was outside the scope of state authorized marijuana growing restrictions.

. . . .

Mahler consented to a further search of his residence. Investigators additionally located two sets of ballistic body armor inside of vest plate carriers. One carrier contained what appeared to be ballistic rifle plates. A large quantity of ammunition which included ammunition for a caliber of firearm that was not located inside of the residence (7.62 x 39mm), three loaded firearm magazines which did not match the firearms located inside of the residence, and paperwork relating to membership in the Gangster Disciples street gang. [Mahler] also granted consent for investigators to search his cell phone. Details regarding the contents of the [Mahler's] cell phone were not received.

. . . .

>According to ATF records, the seized firearms were determined to be a Kimber model, Stainless LW, .45 caliber semi-automatic firearm; a Cobra model, Patriot 45, .45 caliber semi-automatic firearm; and a Smith and Wesson, model M&P 15, .223 caliber rifle with an extended capacity magazine. Additionally, 12 rounds of .45 caliber Winchester-Western ammunition and 48 rounds of 9mm Federal ammunition were seized from [Mahler's] residence. There was no indication that the firearms were stolen. According to MSHP records, the seized marijuana was determined to be approximately 755 grams.

Doc. 79 at ¶¶ 13–17 (emphases omitted).

### B.   Procedural background

In July 2021, a federal grand jury indicted Mahler on one count of possession of a firearms and ammunition in violation of 18 U.S.C. § 922(g)(1) and one count of possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Docs. 1–2.  In December 2022, Mahler pleaded guilty to count one: possession of a firearms and ammunition in violation of 18 U.S.C. § 922(g)(1).  Docs. 61–62.  In exchange, the United States agreed to move for dismissal of count two: possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Doc. 62 at 1–2.  The United States also agreed to bring no further prosecution in this district concerning Mahler's possession of firearms and ammunition, and possession with intent to distribute marijuana, on January 27, 2021, that the United States was aware of at the time of Mahler's guilty plea.  Doc. 62 at 1–2. In June 2023, the Court sentenced Mahler to 48 months' imprisonment, to run consecutively to any sentence imposed in District Court, Oklahoma County, Texas under Docket No. CF-2011-0022, followed by three years' supervised release.  Doc. 87 at 2–3.  Mahler did not appeal his

conviction or sentence, and he is currently serving his sentence at MCC San Diego in California with a projected release date of May 26, 2026.[1]

In February 2025, Mahler filed a motion for compassionate release, doc. 90, which the Federal Public Defender declined to supplement, doc. 91.   The United States file a response opposing Mahler's request, doc. 96, and Mahler filed a reply, doc. 118.   Mahler's motion is now ripe for the Court's consideration.

**II.      Standard**

The compassionate-release statute provides:

> **(c) MODIFICATION OF AN IMPOSED TERM OF IMPRISONMENT.**—The court may not modify a term of imprisonment once it has been imposed except that—
>
> > **(1)**     in any case—
> >
> > > **(A)**    the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i)     extraordinary and compelling reasons warrant such a reduction;
> > > >
> > > > . . . .
> > > >
> > > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

---

[1] *Find an inmate*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited December 5, 2025).

After sentencing, district courts have very limited authority to modify the sentence.  *See* § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except [under certain listed exceptions]."); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. § 3582(b))); Fed. R. Crim. P. 35(a) ("Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.").

The Court may grant compassionate release if the court finds, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

**III.     Discussion**

  **A.     Exhausting administrative remedies**

"According to the plain terms of § 3582(c)(1)(A), prisoners can bring compassionate-release motions on their own once they have exhausted their administrative remedies."  *United States v. Houck*, 2 F.4th 1082, 1083 (8th Cir. 2021) (citation omitted).  "Exhaustion occurs at the earlier of either (1) when the prisoner has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner's] facility.'"  *Id.* at 1083–84 (alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)).  "This requirement is a mandatory claim-processing rule."  *Id.* at 1084 (citations omitted).  But "[u]nlike jurisdictional rules,

5

mandatory claim-processing rules may be forfeited 'if the party asserting the rule waits too long to raise the point.'" *Manrique v. United States*, 581 U.S. 116, 121 (2017) (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005) (per curiam)).  As such, courts enforce the rule when the opposing party properly raises failure to exhaust as a defense.  *Houck*, 2 F.4th at 1084; *Manrique*, 581 U.S. at 121.  The United States has not raised the issue of failure to exhaust here.  Therefore, the Court will proceed to the merits.

    **B.**    **Extraordinary and compelling reasons**

        **1.**    **Medical conditions**

The first ground for release that Mahler raises is his health conditions.  Doc. 90 at 2–3.  According to Mahler, he has serious neck injuries that have worsened since he has been in the care of the Bureau of Prisons, and he suffers from COPD.  *Id.*; doc. 118 at 2–6.  The United States argues that Mahler's medical conditions "do not rise to the level of 'serious physical or medical condition' that qualifies him for consideration of a reduction in sentence."  Doc. 96 at 7.

The guidelines explain that medical circumstances may warrant a sentence reduction when the defendant suffers from a terminal illness, exhibits a substantially diminished ability to take care of himself, requires long-term or specialized care he is not receiving in custody, or is at risk of an ongoing infectious-disease outbreak or public-health emergency.  The applicable guideline provides:

> Extraordinary and compelling reasons [that may warrant a sentencing reduction] exist . . . [if]:
>
> . . . .
>
>     (A)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic

6

>> solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B)   The defendant is—
>
>> (i)   suffering from a serious physical or medical condition,
>>
>> (ii)   suffering from a serious functional or cognitive impairment, or
>>
>> (iii)   experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C)   The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D)   The defendant presents the following circumstances—
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S. Sent'g Guidelines Manual §1B1.13(b)(1)(A)–(D) (U.S. Sent'g Comm'n 2025).

Based on the evidence in the record, Mahler fails to meet the guidelines' standard for his claims. The evidence does not reflect that Mahler is currently experiencing a deteriorating physical or mental condition that would diminish his ability to function in a correctional facility, and his medical condition is not currently considered terminal. Additionally, Mahler fails to

7

demonstrate that the BOP is unable to adequately treat him. Applying the plain meaning of the applicable guidelines, the Court cannot conclude that Mahler purported health conditions constitute "extraordinary and compelling reasons" warranting a sentence reduction.

### 2. Family circumstances

The second ground for release that Mahler raises is his wish to become a caregiver of his children. Doc. 90 at 3; doc. 118 at 6–8. Mahler claims that the Court should release him because his children's grades are slipping, his children are acting out, and his wife is struggling to financially support his children. Doc. 90 at 3; doc. 118 at 6–8. The United States argues that Mahler has failed to establish that his children's caregivers are medically incapacitated and failed to establish that he is the only available caregiver for his children. Doc. 96 at 11.

The applicable guideline provides:

Extraordinary and compelling reasons [that may warrant a sentencing reduction] exist . . . [if]:

. . . .

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the

8

> individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S. Sent'g Guidelines Manual §1B1.13(b)(3)(A)–(D) (U.S. Sent'g Comm'n 2025).

Mahler provides no evidence that supports that his children's caretakers are incapacitated and that he is the only available caretaker. Instead, the burdens and issues of which Mahler complains are typical consequences of incarceration. Accordingly, the Court cannot conclude that Mahler's family circumstances constitute "extraordinary and compelling reasons" that warrant a sentencing reduction.

### 3. Constitutionality of 18 U.S.C. § 922(g)(1)

The third ground that Mahler raises is the constitutionality of 18 U.S.C. § 922(g)(1), which is the statute that led to Mahler's conviction. Doc. 90 at 4; doc. 118 at 8–9. Mahler claims that the Third Circuit and some district courts have found the statute unconstitutional. Doc. 90 at 4; doc. 118 at 8–9. The Eighth Circuit, however, foreclosed Mahler's argument in *United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024). Accordingly, the Court cannot conclude that Mahler's argument constitutes "extraordinary and compelling reasons" that warrant a sentencing reduction.

### 4. Amendment 821

The fourth and final ground that Mahler raises is Amendment 821's impact on his criminal-history score. Amendment 821 went into effect on November 1, 2023, with retroactive effect to Part A and subpart 1 of Part B of Amendment 821. Part A of the amendment, which is relevant here, decreases "status points" by one point for individuals with seven or more criminal-history points and eliminates them for individuals with six or fewer criminal-history points. No eligibility limitations under this part of the amendment apply based on crime type, violence, or weapons, but these are factors that a court may consider in determining whether to

9

grant a sentence reduction.  Subpart 1 of Part B of the amendment is not relevant because Mahler has criminal-history points.

Mahler's criminal convictions resulted in a subtotal criminal-history score of 7. Doc. 79 at ¶ 56.  Because he committed the instant offense while under a criminal-justice sentence for a 2011 state case, Mahler received two status points.  *Id*. at ¶ 57.  With the two status points, Mahler's total criminal-history score became 9, establishing a criminal history category of IV.  *Id*. at ¶ 58.  Amendment 821 only decreases Mahler's status points by one point because he had a subtotal criminal-history score of seven or more.  *See* U.S. Sent'g Guidelines Manual §4A1.1(e) (U.S. Sent'g Comm'n 2025).  With the one-point reduction, Mahler has a total criminal-history score of 8, which still establishes a criminal history category of IV.  In summary, Amendment 821 decreases Mahler's criminal-history score to 8, which has no impact on Mahler's guidelines range.  Accordingly, the Court finds that neither Amendment 821 nor any other ground constitutes a "extraordinary and compelling reason" warranting a sentencing reduction.

### C. Section 3553(a) factors

Even if extraordinary and compelling reasons supported Mahler's request for a sentence reduction—which they do not—the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  Among others, these factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed, *inter alia,* "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(1)–(2).  The Court must also consider "the

need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."   18 U.S.C. § 3553(a)(6).

The Eighth Circuit affords district courts "broad discretion" in weighing the section 3553(a) factors.  *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) (citation omitted).   District courts need not "mechanically recite the sentencing factors listed in 18 U.S.C. § 3553(a)."   *United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020) (citation omitted).  "When considering the § 3553(a) factors, '[a] district court is not required to make specific findings; all that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors.'"   *United States v. Castillo*, 713 F.3d 407, 412 (8th Cir. 2013) (alteration in original) (quoting *United States v. Perkins*, 526 F.3d 1107, 1110 (8th Cir. 2008)).

After reviewing the section 3553(a) factors, the Court finds that Mahler has failed to carry his burden for release.   When reviewing the nature and circumstances of the offense and the history and characteristics of Mahler, the Court finds that these factors weigh heavily against release.

In this case, law enforcement seized a Kimber model, Stainless LW, .45 caliber semi-automatic firearm; a Cobra model, Patriot 45, .45 caliber semi-automatic firearm; a Smith and Wesson, model M&P 15, .223 caliber rifle with an extended capacity magazine; 12 rounds of .45 caliber Winchester-Western ammunition; and 48 rounds of 9mm Federal ammunition.   Doc. 79 at ¶ 17.   Additionally, law enforcement seized approximately 755 grams marijuana.   *Id*.

Prior to this case, Mahler received felony convictions for stealing (two times), possession with intent to distribute marijuana, possession of a controlled substance, and conspiracy to possess with intent to distribute a controlled substance.   *Id*. at ¶¶ 37, 40, 45, 50–51, 60.   Mahler

11

also received misdemeanor convictions for stealing (two times), possession of marijuana (four times), driving while suspended/revoked (four times), no driver's license, possession of drug paraphernalia (two times), and operating a vehicle in a carless and imprudent manner. *Id*. at ¶¶ 38–39, 41–44, 46–49, 52–54.

Mahler fails to come forward with anything that would change the Court's original analysis at sentencing. Releasing Mahler early would neither reflect the seriousness of his offense nor provide just punishment for his offense. And it would give rise to unwarranted sentence disparities among similarly situated defendants. For these reasons, the Court finds that the section 3553(a) factors weigh against Mahler's release. Having thoroughly considered the record and all relevant matters, the Court finds no basis to reduce Mahler's sentence.

## IV. Conclusion

For the reasons set forth above, the Court denies Mahler's [90] Motion for Reduction in Sentence Under 18 U.S.C. 3582(c).

So ordered this 5th day of December 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE